UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
                               :

In re                            :            Chapter 11
                               :

ADIR M. CORP.,             :            Case No. 09-15062 (MG)
                               :
                               :

                Debtor.    :
                               :
-------------------------------------------------------x

**OBJECTION OF UNITED STATES TRUSTEE
TO FIRST APPLICATION OF MEISTER SEELIG
& FEIN LLP FOR ALLOWANCE OF COMPENSATION AND
REIMBURSEMENTOF EXPENSES AND RELATED RELIEF**

TO:    THE HONORABLE MARTIN GLENN,
        UNITED STATES BANKRUPTCY JUDGE:

Diana G. Adams, the United States Trustee for Region 2 (the "United States

Trustee"), has reviewed the following application (the "Application") of Meister Seelig &

Fein LLP ("MSF") seeking an award of interim compensation and reimbursement of out-

of-pocket expenses for the period from July 28, 2009, through February 28, 2010:[1]

| Applicant | Period | Fees | Expenses | Hours |
|---|---|---|---|---|
| Meister Seelig & Fein LLP, Counsel to Debtor | July 28, 2009, through February 28, 2010 | $48,094.50 | $2,478.63 | 120.05 |

## I. INTRODUCTION

MSF seeks fees totaling $48,094.50 and reimbursement of out-of-pocket expenses

totaling $2,478.63 incurred during the Fee Period. The United States Trustee objects to

the Application in its entirety because MSF failed to disclose that it was a pre-petition

---

[1] The Order approving the retention of MSF was as of August 18, 2009. (ECF Doc. # 38). As discussed infra at ¶¶ 24-29, the United States Trustee objects to the allowance of any compensation sought by MSF for services rendered prior to August 18, 2009.

creditor at the time of its retention. Thus, MSF was not disinterested as required by the Bankruptcy Code. Further, by asserting a claim for pre-petition fees in the Application, MSF acknowledges that it still is not disinterested. Accordingly, the United States Trustee requests that the Court deny the Application. The Court may also vacate the Retention Order as well.

The United States Trustee also requests that the Court direct MSF to disgorge a $15,000 retainer paid to MSF for two reasons: (i) MSF failed to meet its burden that its application of the retainer against pre- and post-petition fees, without court approval, was proper and (ii) MSF failed to disclose timely its draw against the retainer as required by the Bankruptcy Rules.

If the Court decides to consider the fees requested by the Application, the United States Trustee also objects to the allowance of these fees and expenses because the Debtor is delinquent in the filing of its monthly operating reports, including for the period ending March 31, 2010. Thus, it is unknown whether the Debtor has sufficient funds to pay the professional fees requested. The United States Trustee further objects because the Debtor is delinquent in the payment of its quarterly fees to the United States Trustee. Even if the Debtor or MSF can establish that sufficient funds are available to pay the requested professional fees and quarterly fees, the United States Trustee requests that a percentage reduction be imposed by the Court. Given the Debtor's current financial condition and the status of the Debtor's case, including that no plan or disclosure statement has been filed with the Court, the outcome of the case is uncertain at this time.

Furthermore, as set forth below, the United States Trustee objects to the allowance and payment of fees to MSF in the amount of $6,308.75 because MSF failed to comply with the UST Guidelines.

## II.  JURISDICTION, VENUE AND STATUTORY PREDICATES

1.      The Court has jurisdiction over this matter pursuant to Sections 157 and 1334 of title 28, United States Code ("Title 28").  This is a core proceeding pursuant to Section 157(b) of Title 28.  Venue is proper pursuant to Section 1408 of Title 28.

2.      The statutory predicates for the relief sought are Sections 330 and 331 of title 11, United States Code (the "Bankruptcy Code").  This matter was initiated pursuant to Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), Administrative Order M-389, Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases (the "Amended Guidelines") and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330[2] (the "UST Guidelines," and together with the Amended Guidelines, the "Guidelines").

## III.      FACTUAL BACKGROUND

**The Chapter 11 Filing**

3.      On August 19, 2009 (the "Petition Date"), Adir M. Corp. (the "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

---

[2] The Bankruptcy Court for this district has adopted the UST Guidelines.  See In re Brous, 370 B.R. 563, 569 at n8. (Bankr. S.D.N.Y. 2007).

4.     The Debtor is the owner/operator of a take out restaurant named Miro Café located at 595 Broadway, New York New York 10012.

5.     Since the Petition Date, the Debtor has operated its business and managed its properties as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

6.     The United States Trustee solicited creditors for the formation of a committee but received insufficient responses to form one.

7.     No trustee or examiner has been appointed in the Debtor's bankruptcy case.

**Retention of MSF**

8.     On the Petition Date, MSF filed the statement of compensation paid or agreed to be paid by the Debtor required by Bankruptcy Rule 2016 (the "2016 Statement"), and listed a $15,000 retainer.  (ECF Doc. # 1).  The Rule 2016 Statement lists the amount MSF agreed to be paid for legal services as "per court order," and the balance due as "per court order."  Id.

9.     On October 24, 2009, the Debtor filed an application to retain MSF as its counsel.  (ECF Doc. # 12).  A review of the Court's docket, however, reveals that the Court did not enter an Order in connection with that application.

10.     On December 23, 2009, the Debtor filed another application (the "Retention Application") to retain MSF.  (ECF Doc. # 26).

11.     The Retention Application provides, among other things, that MSF is "disinterested" in accordance with Sections 101(14) and 327(a) of the Bankruptcy Code.  Retention App. at ¶ 8.  Neither the Retention Application nor the affidavit in support of

Lawrence F. Morrison (the "Morrison Affidavit"), sworn to on October 9, 2009, discloses that, at the time, MSF held a claim for legal fees against the Debtor.

12.     The Retention Application also provides that the Debtor paid MSF "a retainer in the amount of $15,000 inclusive of the filing fee in connection with legal services from the Debtor prepetition." Retention App. at ¶ 11. A copy of the retainer agreement is not annexed to the Retention Application. Neither the Retention Application nor the Morrison Affidavit discloses that MSF had applied or would apply the retainer against fees incurred without court approval.

13.     By Order dated January 22, 2010 (the "Retention Order"), the Court authorized the Debtor's retention of MSF nunc pro tunc to August 18, 2009, (ECF Doc. # 38), which is the date the Retention Application provides that MSF began providing services to the Debtor. Retention App. at ¶ 12. The Retention Order provides, among other things, "that MSF shall be compensated in accordance with the procedure set forth in §§ 330 and 331 of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules, and the Guidelines for Fees and Disbursements for Professionals in the Southern District of New York Bankruptcy Cases, and any orders issued by the Court." Retention Order at 3.

**The Fee Application**

14.     On March 12, 2010, MSF filed the Application. (ECF Doc. # 42). A review of the invoices annexed as exhibits to the Application reveals that MSF seeks an allowance of $3,822.50 for fees incurred pre-petition. Application, Exhibit A. The invoices also provide that MSF has applied the sum of $3,822.50 of the retainer against the pre-petition fees incurred, and the sum of $11,177.50 against post-petition fees and

expenses.  See Application, Exhibit A.  Specifically, the invoices reflect the $15,000 retainer applied as follows:

| | |
|---|---|
| August 13, 2009 | $450.00 ($450.00 against pre-petition fees) |
| September 17, 2009 | $8,786.13 ($3,372.50 against pre-petition fees; $5,413.63 against post-petition fees) |
| October 5, 2009 | $4,882.30 (against post-petition fees) |
| November 13, 2009 | $881.57 (against post-petition fees) |
| Total | $15,000.00 |

15. As of the date hereof, the Court has not entered an Order authorizing any fees be paid or any draws against the retainer.  In addition, other than the statements contained in the invoices, the United States Trustee is unaware of any disclosures made by MSF concerning its draw against the retainer.

**Status of the Case**

16. By Order dated January 6, 2010, the Court fixed February 26, 2010, as the last day by which to file proofs of claim.  The Court's claims register indicates that the aggregate amount of secured and unsecured claims asserted against the Debtor is approximately $1.3 million.

17. As of the date hereof, the Debtor has not filed a plan and disclosure statement with the Court.

18. The Debtor is delinquent with the filing of its monthly operating reports. A review of the Court's docket reveals that the Debtor did not file monthly operating reports for the months of November 2009, December 2009, February 2010 or March 2010.  The last operating report filed, for the period ending January 31, 2010, provides that the Debtor is operating at a profit in the amount of $22,649, and has cash in the

amount of 9,274. (ECF Doc. # 40). The Debtor also is delinquent in the payment of quarterly fees due to the United States Trustee pursuant to Section 1930(a)(6) of Title 28 in the amount of $11,418.81. This amount is estimated because the Debtor is delinquent in the filing of its monthly operating reports. Once the disbursement information for the months of November 2009, December 2009, February 2010 and March 2010 is provided to the United States Trustee, additional quarterly fees plus interest will be due.

## IV. LEGAL STANDARDS

**A.**     **<u>Reasonableness</u>**

19.     Bankruptcy Code Section 330(a)(1) provides that:

> After notice to the parties in interest and the United States trustee and a hearing, and subject to section 326, 328, and 329, the court may award to a trustee, … an examiner, … or a professional person employed under section 327 or 1103 –

> (A)     reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, … or attorney and by any paraprofessional person employed by any such person; and

> (B)     reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1)(A) and (B).

20.     To determine reasonableness, Section 330(a)(3) of the Bankruptcy Code instructs that:

> . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –

> a.     the time spent on such services;

> b.     the rates charged for such services;

> c.     whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

7

> d.  whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> e.  with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> f.  whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

21.  Each applicant bears the burden of proof for its claim for compensation. Howard & Zukin Capital v. High River Ltd. P'ship, No. 05 Civ. 5726 (BSJ), 2007 WL 1217268, at *2 (S.D.N.Y. Apr. 24, 2007); Zeisler & Zeisler, P.C. v. Prudential Ins. Co. (In re JLM, Inc.), 210 B.R. 19, 24 (B.A.P. 2d Cir. 1997); In re Northwest Airlines Corp., 382 B.R. 632, 645 (Bankr. S.D.N.Y. 2008) (citations omitted); In re Keene Corp., 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997). The failure of an applicant to sustain the burden of proof as to the reasonableness of the compensation may result in the denial of the request for compensation. In re Beverly Mfg. Corp., 841 F.2d 365 (11th Cir. 1988).

22.  The Court has an independent burden to review fee applications "lest overreaching … professionals drain [the estate] of wealth which by right should inure to the benefit of unsecured creditors." Keene Corp., 205 B.R. at 695 (quoting In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 844 (3d Cir. 1994)).

23.  Further, the Bankruptcy Court has the authority to reduce fees or expenses when they are disproportionate to the benefit to the estate, even if it already has approved the professional's retention under Sections 327 and 328 of the Bankruptcy Code. In re Taxman Clothing Co., 49 F.3d 310, 316 (7th Cir. 1995); see also, Zolfo, Cooper & Co. v.

Sunbeam-Oster Co., Inc., 50 F.3d 253, 262-63 (3d Cir. 1995) (affirming lower courts'
denial of improperly documented and inadequately detailed expenses).

**B.      Interim Compensation**

24.      Interim fee awards are discretionary, and are subject to re-examination and
adjustment during the course of the case.  In re Spanjer Bros., Inc., 191 B.R. 738, 747
(Bankr. D. Ill. 1996) (citing In re Jensen-Farley Pictures, Inc., 47 B.R. 557 (Bankr. D.
Utah 1985)).  Any interim fees awarded or paid under Section 331 of the Bankruptcy
Code, are payable on account and are subject to the Court's review at the time that
applications for final compensation are made.

**C.      Actual and Necessary Expenses**

25.      Under Section 330(a)(1)(B) of the Bankruptcy Code, only documented
expenses that are actual and necessary are reimbursable.  11 U.S.C. § 330(a)(1)(B).
Professionals must "furnish enough specificity for the Court to establish whether a given
expense was both actual and necessary."  In re Korea Chosun Daily Times, Inc., 337 B.R.
758, 769 (Bankr. E.D.N.Y. 2005) (quoting In re S.T.N. Enters., Inc., 70 B.R. 823, 834
(Bankr. D. Vt. 1987)).  Expenses are "actual" if they are incurred and not based on a
formula or pro rata calculation.  Bennett Funding, 213 B.R. at 398.  Expenses are
"necessary" if they were "reasonably needed to accomplish proper representation of the
client."  In re American Preferred Prescription, Inc., 218 B.R. 680, 686-87 (Bankr.
E.D.N.Y. 1998).

## V. OBJECTION

**A.**     <u>Fees</u>

    **Application Should Be Denied and Retention Order May Be Vacated Because MSF Is Not Disinterested**

26.    By the Application, MSF seeks an allowance of fees in the amount of $3,822.50 for services rendered pre-petition. As stated above at ¶ 11, neither the Retention Application nor the Morrison Affidavit discloses that, at the time the Debtor sought to retain MSF, MSF held a claim against the Debtor.

27.    Pursuant to Section 327(a) of the Bankruptcy Code, it is plain that the Debtor, with the court's approval, may only "employ one or more attorneys . . . that do not hold or represent an interest adverse to the estate, and that are disinterested persons. . . ." 11 U.S.C. § 327(a). Section 101(14) of the Bankruptcy Code provides that a party is "disinterested" if, among other things, that party "is not a creditor" and "does not have an interest materially adverse to the interest of the estate or any class of creditors . . . by reason of any . . . interest in the debtor . . . ." 11 U.S.C. § 101(14). Section 101(10) of the Bankruptcy Code defines a "creditor" as, among other things, an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). In addition, Bankruptcy Rule 2014 requires that applications for employment of attorneys contain, among other things, "all of the person's connections with the debtor, creditors and any other party in interest . . . ." Fed. R. Bankr. P. 2014(a).

28.    By requesting fees incurred pre-petition in the Application, MSF admits that it was a creditor at the time the Debtor sought to retain MSF. <u>See</u> Application, Exhibit A. Thus, contrary to MSF's representation in the Application that it was

disinterested as required by Sections 101(14) and 327(a) of the Bankruptcy Code, <u>see</u> Retention App. at ¶ 8, MSF was not disinterested then, and is not disinterested now.  <u>See</u>, <u>e.g.</u>, <u>In re Source Enters., Inc.</u>, No. 06-11707, slip. op. at 15-18 (Bankr. S.D.N.Y. March 27, 2008) (a professional who is a prepetition creditor does not meet the disinterested-person requirement) (citation omitted).

29.     In addition, MSF failed to comply with Bankruptcy Rule 2014 by not disclosing its pre-petition claim at the time of its retention.  Thus, at a minimum, the Application should be denied in its entirety.  <u>See</u> <u>In re Laferriere</u>, 286 B.R. 520, 526 (Bankr. D. Vt. 2002) ("The approach within the Second Circuit 'has uniformly been to decide Bankruptcy Code and Rule disclosure violations with an inflexible standard.  No exceptions are to be made based upon inadvertency (slipshodness) or good faith.') (citing <u>Matter of Kero-Sun, Inc.</u>, 58 B.R. 770, 780 (Bankr. D. Conn. 1986) (citing <u>General Motors Acceptance Corp. v. Updike</u> (<u>In re H.L. Stratton, Inc.</u>), 51 F.2d 984 (2d Cir. 1931) (denying compensation to attorneys for a bankruptcy receiver because, <u>inter</u> <u>alia</u>, the attorneys' disclosure affidavit failed to state with specificity the law firm's prepetition representation of a bank that had asserted an offset against the receiver, despite having made oral representation to the Court of same)).

30.     If the Court decides to consider the fees in the Application, then the law is clear that the pre-petition fees of $3,822.50 should not be allowed.  The Bankruptcy Code does not contain a provision permitting the allowance of compensation for services rendered or the reimbursement of expenses by professionals retained under Section 327(a) of the Bankruptcy Code prior to the date of retention.  <u>See</u> <u>In re English Sheppard Realty Corp.</u>, No. 99-10393, 2010 WL 1492272 at *2 (Bankr. E.D.N.Y. Apr. 13, 2010)

("Failure to receive court approval authorizing counsel to be retained under Section 327(a) is cause alone for denying compensation under § 330(a)(1) for any services rendered.)

31.     Rather, Section 327(a) of the Bankruptcy Code requires retention by the court even if the professional is not to be compensated from estate funds. See <u>In re Engel</u>, 124 F.3d 567, 571 (3d Cir. 1997).

32.     In addition, the Second Circuit has ruled that professionals which have been retained by the debtor cannot be compensated as an administrative expense for services rendered prior to the date of retention set by the Court. See <u>In re Keren Ltd. P'ship</u>, 189 F.3d. 86, 88 (2d Cir. 1999); <u>see also</u>, <u>In re Fibermark</u>, 349 B.R. 385, 394 (Bankr. D. Vt. 2006).

33.     Accordingly, because MSF failed to disclose its pre-petition claim and is not disinterested as of the date hereof, the United States Trustee requests that the Court enter an Order denying the Application in its entirety. The Court may also vacate the Retention Order. <u>See</u>, <u>e.g.</u>, <u>In re Deluxe Cleaners of Durham, Inc.</u>, No. 07-80327, 2008 WL 1944576, *6 (Bankr. M.D.N.C. 2008) (court ordered vacatur of retention order where debtor's attorney subsequently was determined to be pre-petition creditor); <u>see also</u>, <u>In re Independent Eng'g Co., Inc.</u>, 232 B.R. 529, 532 (1st Cir. B.A.P. 1999) (affirming bankruptcy court order disqualifying attorney and vacating prior employment order due to attorney's failure to disclose fee arrangement and post-petition payment from debtor). If the Court determines that the fees should be allowed in part, then the United States Trustee requests that, at a minimum, the Court should reduce any allowance of compensation to MSF by $3,822.50.

**MSF Should Disgorge The Retainer Because It Has Not Met Its Burden To Show That Its Undisclosed Draw Down Was Proper**

34.      As noted above at ¶ 14, the invoices that MSF submitted in connection with the Application show that, without court approval, MSF applied the $15,000 pre-petition retainer against (i) the pre-petition fees requested (in the amount of $3,822.50) and (ii) a portion of the post-petition fees (in the amount of $11,177.50), for which it now seeks the Court's approval.

35.      Whether or not a prepetition retainer is property of the estate and, therefore, subject to disgorgement depends on the specific retainer that was intended by the parties and state law.  See In re King, 392 B.R. 62, 71 (Bankr. S.D.N.Y. 2008) ("Ultimately, the question is "whether or not the specific retainer was intended by the parties as a security retainer, which may be property of the estate, or an advance payment, which belongs to the attorney and is not property of the debtor client's estate.") (citations omitted).

36.      Counsel bears the burden of proving that the Debtor intended the retainer to be a present payment when made, not as security for future services.  In re Production Assocs. Ltd., 264 B.R. 180, 188 (Bankr. D. Ill. 2001).

37.      In this case, MSF has not met its burden for at least three reasons.  First, MSF never provided the Court with a copy of any engagement letter or other written agreement with the Debtor that concerns the retainer.  Second, the Retention Application states only that the retainer was paid "in connection with legal services."  Retention App. at ¶ 11.  Third, the Rule 2016 Statement provides that MSF agreed to accept fees for legal services "per court order," which can be interpreted as an admission by MSF that the

retainer is property of the estate and, therefore, application thereof is subject to court order.

38.     In addition, MSF did not disclose its draw down against the retainer as required by Bankruptcy Rule 2016 which requires that "[a] supplemental statement shall be filed and transmitted to the United States trustee within 14 days after any payment or agreement not previously disclosed." Fed. R. Bankr. P. 2016(b). No formal disclosure was made. The United States Trustee discovered the payments that MSF made to itself after reviewing MSF's invoices that showed that MSF applied the retainer against fees incurred pre- and post-petition.

39.     It has long been the practice in this Circuit to deny compensation and order disgorgement where counsel has failed to comply with the disclosure provisions. Futuronics Corp. v. Arutt, Nachamie & Benjamin (In re Matter of Futuronics Corp.), 655 F.2d 463, 469 (2d Cir. 1981); see also, In re Arlan's Dep't. Stores, Inc., 615 F.2d 925, 937-38 (2d Cir. 1979) (finding no abuse of discretion in court's order of disgorgement of all fees where counsel failed to divulge all connection with debtor and failed to disclose all fees); Matter of Kero-Sun, Inc., 58 B.R. 770, 780 (Bankr. D. Conn. 1986) (finding that attorney's violation of disclosure requirements, inter alia, warranted ordering the disgorgement of fees not reported).

40.     For these reasons, the United States Trustee requests that the Court direct that MSF to disgorge the sum of $15,000 and return these funds to the Debtor. See Arlan's Dep't Store, 615 F.2d 925, 937-38; see also, Independent Eng'g., 232 B.R. at 533 (affirming bankruptcy court order requiring attorney to disgorge fees for attorney's failure to disclose timely post-petition draws against retainer). In addition, for these

reasons/, the Court may also vacate the Retention Order.  See Independent Eng'g, 233

B.R. at 533.

### Percentage Reduction

41.     By the Application, MSF seeks allowance and payment of 100 percent of

the compensation and reimbursement of 100 percent of the out of pocket expenses

incurred during the Fee Period.  As stated in ¶ 18 above, the Debtor is delinquent in the

filing of its monthly operating reports.  Thus, the amount of cash that the Debtor has on

hand at this time is unknown.  Further, the Debtor's last operating report for the period

ending January 31, 2010, provides that the Debtor had cash on hand of only

approximately $9,200.  Based on these figures, it does not appear that the Debtor has the

ability to pay the quarterly fees due and owing, or the professional fees requested by

MSF.

42.     Even if MSF can establish that the Debtor has the ability to pay the

quarterly fees due to the United States Trustee and the requested professional fees, the

United States Trustee believes that the Court should impose a substantial percentage

reduction against the fees requested by the Application.  It is noted that the Debtor's

financial condition is not strong, and the Debtor has not yet filed a plan and disclosure

statement.  Thus, the outcome of the case is uncertain.

43.     Further, the results that will be achieved in the case serve as an important

factor in determining the success of the efforts of these applicants.  See, e.g., In re Bank

of New England Corp., 134 B.R. 450, 459 (Bankr. D. Mass. 1991), aff'd, 142 B.R. 584

(D. Mass. 1992) (because of the difficulty in determining whether services were actual

and necessary when reviewing interim applications, bankruptcy courts routinely require

hold backs until the end of the case); see also, In re Child World, Inc., 184 B.R. 14, 18 (Bankr. S.D.N.Y. 1995) (courts commonly use holdbacks to moderate potentially excessive interim allowances and to offer an incentive to timely resolution of the case). Accordingly, the United States Trustee requests that the Court reduce any compensation awarded to MSF by a percentage to be determined by the Court (colloquially referred to as a "holdback") pending the final resolution of the case.

### Lack of Compliance with Guidelines/Time Records

44.     A review of MSF's time records reveals that the records have not been maintained in accordance with the UST Guidelines, which specifically provide that "[t]ime entries should be kept contemporaneously with the services rendered in time periods of tenths of an hour."  UST Guidelines at ¶ 4(v).  Many of the time entries contained in MSF's invoices have not been recorded in tenths of an hour.  By way of example only, some of these time entries include:  (i) "Obtain additional lien search results and send to L. Morrison and S. Rich; organize into file (.08); (ii) "Go through, compile and organize lien search results.  Save into file and correspond with L. Morrison and S. Rich regarding same (.42)" and (iii) "Legal Assistant (.25)."  Absent explanation, the United States Trustee requests that the Court reduce any compensation awarded to MSF by $2,400 (or five percent).

### Legal Assistant/Vague/Overhead

45.     MSF seeks an allowance of compensation in the amount of $86.25 for the services of a "Legal Assistant."[3]  The time entries recorded for Legal Assistant are vague and read only, "Legal Assistant."  Further, to the extent that the services provided by the

---

[3] MSF distinguishes the services performed by the "Legal Assistant" from those performed by its "Paralegals."  See Application, Ex. A.

Legal Assistant are clerical in nature, they are part of the firm's overhead and should be disallowed.  See Fibermark, 349 B.R. at 400 (Overhead expense reimbursement will be "denied . . . categorically."); see also, In re Hudson, 364 B.R. 875, 881 (Bankr. N.D.N.Y. 2007) (the court "considers administrative activities, photocopying, organizing documents, etc., as clerical tasks included in a firm's overhead rather than services of a legal nature.").  Absent explanation, the United States Trustee requests that the Court deny MSF's request for compensation in the amount of $86.25 for the "Legal Assistant."

**B.**     **Expenses**

46.     Subject to the objections raised in paragraphs 19-24 above, the United States Trustee does not object to MSF's request for reimbursement of out-of-pocket expenses in the aggregate amount of $2,478.63.

## VI.  CONCLUSION

WHEREFORE, the United States Trustee respectfully submits that the Court enter an Order (i) denying the Application in its entirety, (ii) disqualifying MSF and vacating the Retention Order and (iii) directing MSF to disgorge the sum of $15,000 and return it to the Debtor.  In the alternative, the United States Trustee requests that the Court enter an Order (i) reducing the fees allowed to MSF by the amounts set forth

herein, (ii) directing MSF to supplement the Application as set forth herein and (iii)

granting such other relief as is just.

Dated: New York, New York
      April 23, 2010                   Respectfully submitted,

                                         DIANA G. ADAMS
                                         UNITED STATES TRUSTEE

                                By */s/ Andrea B. Schwartz*
                                         Andrea B. Schwartz, Trial Attorney
                                         33 Whitehall Street, 21st Floor
                                       New York, New York 10004
                                       Tel. No. (212) 510-0500
                                       Fax No. (212) 668-2255