UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

Hearing Date: January 20, 2011
Hearing Time: 10:00 a.m.

------------------------------------------------------x
                                          :
In re                                     :          Chapter 11
                                          :
ADIR M. CORP.,                            :          Case No. 09-15062 (MG)
                                          :
                                          :
                        Debtor.           :
                                          :
------------------------------------------------------x

**OBJECTION OF UNITED STATES TRUSTEE TO APPLICATION
OF MEISTER SEELIG & FEIN LLP FOR ALLOWANCE OF
COMPENSATION AND REIMBURSEMENT OF EXPENSES**

TO:     THE HONORABLE MARTIN GLENN,
        UNITED STATES BANKRUPTCY JUDGE:

        Tracy Hope Davis, the United States Trustee for Region 2 (the "United States

Trustee"), by and through her counsel, has reviewed the following application (the

"Application") of Meister Seelig & Fein LLP ("MSF") seeking an award of interim

compensation and reimbursement of out-of-pocket expenses for the period from August

19, 2009, through August 31, 2010 (the "Fee Period"):

| Applicant | Period | Fees | Expenses | Hours |
|-----------|--------|------|----------|-------|
| Meister Seelig & Fein LLP, Counsel to Debtor | August 19, 2009, through August 31, 2010 | $95,004.10 | $3,651.48 | 238.04 |

## I. INTRODUCTION

        MSF seeks fees totaling $95,004.10 and reimbursement of out-of-pocket expenses

totaling $3,651.48 incurred during the Fee Period.  The Application represents MSF's

second attempt in this case for a first allowance of interim fees, having withdrawn its

Initial Application (defined below) in June 2010, in response to the Initial UST Objection

(defined below). This Application, like the Initial Application, contains significant deficiencies, thus warranting the United States Trustee's objection.

The United States Trustee objects to the allowance at this time of any fees or the reimbursement of any out-of-pocket expenses because the Debtor is delinquent in the filing of its monthly operating reports, and its payment of quarterly fees to the United States Trustee in accordance with Section 1930 of title 28, United States Code ("Title 28"). If the Debtor cures its quarterly fee delinquencies prior to the hearing on the Application, then the United States Trustee proposes that the Court nevertheless impose a substantial percentage reduction or "holdback" on MSF's fees given the facts and circumstances underlying this case, including that no plan or disclosure statement has been filed with the Court, and the outcome of the case is uncertain.

In addition, for the reasons set forth below, the United States Trustee objects to the allowance and payment of fees incurred by MSF in the amount of approximately $21,000.00, and reimbursement of expenses in the amount of $3,651.48.

## II. JURISDICTION, VENUE AND STATUTORY PREDICATES

1. The Court has jurisdiction over this matter pursuant to Sections 157 and 1334 of Title 28. This is a core proceeding pursuant to Section 157(b) of Title 28. Venue is proper pursuant to Section 1408 of Title 28.

2. The statutory predicates for the relief sought are Sections 330 and 331 of title 11, United States Code (the "Bankruptcy Code"). This matter was initiated pursuant to Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), Administrative Order M-389, Amended Guidelines for Fees and

Disbursements for Professionals in Southern District of New York Bankruptcy Cases (the

"Amended Guidelines") and the United States Trustee Guidelines for Reviewing

Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. §

330[1] (the "UST Guidelines," and together with the Amended Guidelines, the

"Guidelines").

### III.    FACTUAL BACKGROUND

**The Chapter 11 Filing**

3.     On August 19, 2009 (the "Petition Date"), Adir M. Corp. (the "Debtor")

filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

4.     The Debtor is the owner/operator of a take out restaurant named Miro

Café located at 595 Broadway, New York New York 10012.

5.     Since the Petition Date, the Debtor has operated its business and managed

its properties as a debtor in possession pursuant to Sections 1107 and 1108 of the

Bankruptcy Code.

6.     The United States Trustee solicited creditors for the formation of a

committee but received insufficient responses to form one.

7.     No trustee or examiner has been appointed in the Debtor's bankruptcy

case.

**Retention of MSF**

8.     On the Petition Date, MSF filed the statement of compensation paid or

agreed to be paid by the Debtor required by Bankruptcy Rule 2016 (the "2016

Statement"), and listed a $15,000 retainer.  (ECF Dkt. No. 1).  The Rule 2016 Statement

---

[1] The Bankruptcy Court for this district has adopted the UST Guidelines.  See In re
Brous, 370 B.R. 563, 569 at n8. (Bankr. S.D.N.Y. 2007).

lists the amount MSF agreed to be paid for legal services as "per court order," and the balance due as "per court order."  Id.

9.      On October 24, 2009, the Debtor filed an application to retain MSF as its counsel.  (ECF Dkt. No. 12).  A review of the Court's docket, however, reveals that the Court did not enter an Order in connection with that application.

10.      On December 23, 2009, the Debtor filed another application (the "Retention Application") to retain MSF.  (ECF Dkt. No. 26).

11.      The Retention Application provides, among other things, that MSF is "disinterested" in accordance with Sections 101(14) and 327(a) of the Bankruptcy Code. Retention App. at ¶ 8.  Neither the Retention Application nor the affidavit in support of Lawrence F. Morrison (the "Morrison Affidavit"), sworn to on October 9, 2009, discloses that, at the time, MSF held a claim for legal fees against the Debtor.

12.      The Retention Application also provides that the Debtor paid MSF "a retainer in the amount of $15,000 inclusive of the filing fee in connection with legal services from the Debtor prepetition."  Retention App. at ¶ 11.  A copy of the retainer agreement is not annexed to the Retention Application.  Neither the Retention Application nor the Morrison Affidavit discloses that MSF had applied or would apply the retainer against fees incurred without court approval.

13.      By Order dated January 22, 2010 (the "Retention Order"), the Court authorized the Debtor's retention of MSF nunc pro tunc to August 18, 2009, (ECF Dkt. No. 38), which is the date the Retention Application provides that MSF began providing services to the Debtor.  Retention App. at ¶ 12.  The Retention Order provides, among other things, "that MSF shall be compensated in accordance with the procedure set forth

in §§ 330 and 331 of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules, and the Guidelines for Fees and Disbursements for Professionals in the Southern District of New York Bankruptcy Cases, and any orders issued by the Court."  Retention Order at 3.  In addition, the Retention Order provides, "that MSF shall file a notice with the Court and serve it on the U.S. Trustee's Office, counsel for the committee of unsecured creditors, if any, and parties in interest if there is any change in the rates charged by MSF."  Id. at 2.

**The Initial Application**

14.     On March 12, 2010, MSF filed its first application for interim fees (the "Initial Application"), seeking an allowance of fees in the amount of $48,094.50 and reimbursement of out-of-pocket expenses in the amount of $2,478.63, for the period from July 28, 2009, through February 28, 2010.  (ECF Dkt. No. 42).  A hearing to consider the Initial Objection was scheduled for April 27, 2010.

15.     On April 23, 2010, the United States Trustee filed an objection (the "Initial UST Objection") to the Initial Application.  Among other things, the United States Trustee objected to the fees requested and out-of-pocket reimbursements sought on the grounds that: (i) the fees sought preceded the date for which MSF's retention was authorized, (ii) MSF had a pre-petition claim against the Debtor that MSF failed to disclose, thereby rendering the firm not disinterested at the time of its retention, and (iii) MSF had drawn down a pre-petition retainer in the amount of $15,000.00 without court authorization or disclosure.  (ECF Dkt. No. 49).  In fact, MSF's draw down on the pre-petition retainer against pre- and post-petition fees only was discovered by the United

16.    States Trustee through her counsel's review of MSF's invoices, which showed that MSF had applied the retainer against pre- and post-petition fees.  <u>See</u> Initial Objection at ¶ 38.

17.    On June 1, 2010, in response to the Initial UST Objection, MSF withdrew the Initial Application.  (ECF Dkt. No. 56).  In addition, MSF also provided the United States Trustee with an affidavit of Lawrence Morrison, sworn to on June 22, 2010, wherein Mr. Morrison represented that: (i) MSF waived its claim of $3,822.50 for fees incurred in connection with pre-petition services, (ii) MSF would restore the sum of $15,000.00 to its attorney trust account, representing the pre-petition retainer, and to not apply these funds until a final fee application and final order is entered by the Court.  In addition, MSF agreed to a further voluntary reduction in the amount of $7,500.00 of fees sought on a final basis in this case.

**Status of the Case**

18.    By Order dated January 6, 2010, the Court fixed February 26, 2010, as the last day by which to file proofs of claim.  The Court's claims register indicates that the aggregate amount of secured and unsecured claims asserted against the Debtor is approximately $1.15 million.

19.    As of the date hereof, the Debtor has not filed a plan and disclosure statement with the Court.

20.    The Debtor is delinquent with the filing of its monthly operating reports. A review of the Court's docket reveals that the Debtor did not file monthly operating reports for the month of December 2010.  The last operating report filed, for the period ending November 30, 2010, provides that the Debtor is operating at a loss in the amount

of $6,454.00, and has cash in the amount of $34,684. (ECF Dkt. No. 87). The Debtor also is delinquent in the payment of quarterly fees due to the United States Trustee pursuant to Section 1930(a)(6) of Title 28 in the amount of $13,782.83. This amount is estimated because the Debtor is delinquent in the filing of its monthly operating reports. Once the disbursement information for the month of December 2010, additional quarterly fees plus interest may be due.

## IV. LEGAL STANDARDS

### A. **<u>Reasonableness</u>**

21. Bankruptcy Code Section 330(a)(1) provides that:

After notice to the parties in interest and the United States trustee and a hearing, and subject to section 326, 328, and 329, the court may award to a trustee, … an examiner, … or a professional person employed under section 327 or 1103 –

(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, … or attorney and by any paraprofessional person employed by any such person; and

(B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1)(A) and (B).

22. To determine reasonableness, Section 330(a)(3) of the Bankruptcy Code instructs that:

. . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –

a. the time spent on such services;

b. the rates charged for such services;

c. whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

7

d.  whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

e.  with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

f.  whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

23.  Each applicant bears the burden of proof for its claim for compensation. Howard & Zukin Capital v. High River Ltd. P'ship, No. 05 Civ. 5726 (BSJ), 2007 WL 1217268, at *2 (S.D.N.Y. Apr. 24, 2007); Zeisler & Zeisler, P.C. v. Prudential Ins. Co. (In re JLM, Inc.), 210 B.R. 19, 24 (B.A.P. 2d Cir. 1997); In re Northwest Airlines Corp., 382 B.R. 632, 645 (Bankr. S.D.N.Y. 2008) (citations omitted); In re Keene Corp., 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997).  The failure of an applicant to sustain the burden of proof as to the reasonableness of the compensation may result in the denial of the request for compensation.  In re Beverly Mfg. Corp., 841 F.2d 365 (11th Cir. 1988).

24.  The Court has an independent burden to review fee applications "lest overreaching … professionals drain [the estate] of wealth which by right should inure to the benefit of unsecured creditors."  Keene Corp., 205 B.R. at 695 (quoting In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 844 (3d Cir. 1994)).

25.  Further, the Bankruptcy Court has the authority to reduce fees or expenses when they are disproportionate to the benefit to the estate, even if it already has approved the professional's retention under Sections 327 and 328 of the Bankruptcy Code.  In re Taxman Clothing Co., 49 F.3d 310, 316 (7th Cir. 1995); see also, Zolfo, Cooper & Co. v.

<u>Sunbeam-Oster Co., Inc.</u>, 50 F.3d 253, 262-63 (3d Cir. 1995) (affirming lower courts'

denial of improperly documented and inadequately detailed expenses).

**<u>"Lumping" or Block Billing</u>**

26.     The standards for time records are contained in the Guidelines.  Generally,

fee applications, standing alone, must contain sufficient detail to demonstrate compliance

with Section 330 of the Bankruptcy Code.  <u>In re CCT Commc'ns, Inc.</u>, No. 07-10210,

2010 WL 3386947, at *4 (Bankr. S.D.N.Y. Aug. 24, 2010) (citing UST Guidelines, (b)).

Any uncertainties due to poor record keeping are resolved against the applicant.  <u>Id.</u>

(citing <u>In re Poseidon Pools of America</u>, 216 B.R. 98, 100-101 (E.D.N.Y. 1997)).

27.     To that end, the UST Guidelines provide that:

> Services should be noted in detail and not combined or
> "lumped" together, with each service showing a separate
> time entry; . . . . Time entries for telephone calls, letters,
> and other communications should give sufficient detail to
> identify the parties to and the nature of the communication.
> Time entries for court hearings and conferences should
> identify the subject of the hearing or conference.

<u>See</u> UST Guidelines, (b)(4)(v).

28.     Billing records must clearly identify each discrete task billed, indicate the

date the task was performed, the precise amount of time spent (not to be billed in

increments greater than one-tenth of an hour, who performed the task, the level of

experience and that person's hourly rate).  <u>In re Baker</u>, 374 B.R. 489, 494 (Bankr.

E.D.N.Y. 2007) (citing <u>In re Fibermark, Inc.</u>, 349 B.R. 385, 395 (Bankr. D. Vt. 2006));

<u>see also</u>, UST Guidelines at (b)(4)(iii).  Aggregating of multiple tasks into one billing

entry, typically referred to as block billing or lumping, is routinely disallowed as it makes

it exceedingly difficult to determine the reasonableness of the time spent on each of the

individual tasks performed.  See Baker, 374 B.R. at 494 (citing Dimas, 357 B.R. at 576;

Fibermark, 349 B.R. at 395; Poseidon Pools, 180 B.R. at 729) (additional citations

omitted)).  As a result of lumping time, the timekeeper fails to sustain [his] burden of

providing that [his] fees are reasonable.  Brous, 370 B.R. at 576.  Consequently, courts

summarily will disallow time for discrete legal services merged together in a fee

application. Baker, 374 B.R. at 494, 496 (bankruptcy court deducted 20 percent from the

requested fees for improper block billing); see also, In re M. Fabrikant & Sons, Inc., Case

No. 06-12737 (SMB) (Bankr. S.D.N.Y. Jan. 13, 2009) (Memorandum Decision

Regarding Applications for Professional Fees and Reimbursement of Expenses) (ECF

Dkt. No. 976) (bankruptcy court allowed only 30 minutes for each lumped entry,

irrespective of the aggregate time billed for that entry).

**Vague Time Entries**

29.     In addition, time entries may not be vague.  See Baker, 374 B.R. at 495

("The records must be detailed enough to enable a Court to determine whether the

attorneys are claiming compensation for hours that are 'redundant, excessive, or

otherwise unnecessary.'"); see also, In re Bennett Funding Group, 213 B.R. 234, 244

(Bankr. N.D.N.Y. 1997) ("In cases where the time entry is too vague or insufficient to

allow for a fair evaluation of the work done and the reasonableness and necessity for such

work, the court should disallow compensation for such services.").  Such vague entries

"make a fair evaluation of the work done and the reasonableness and necessity for the

work extremely difficult, if not impossible."  In re Hudson, 364 B.R. 875, 880 (Bankr.

N.D.N.Y. 2007).  "Entries that contain such vague characterization of the services

performed as 'meeting with,' 'conversations with,' 'review materials or docket,' and

'draft correspondence to' fail to adequately describe the services provided and are routinely disallowed." In re Hirsch, No. 02-17966, 2008 WL 5234057, at *7 (Bankr. E.D.N.Y. Dec. 11, 2009).

30.     Similarly, with respect to research or reviewing materials, the time entries must at a minimum provide a description of the issue that is being researched or reviewed.

**Overhead and Other Administrative Activities**

31.     Word processing is "a clerical service regardless of who performs it." Bennett Funding, 213 B.R. at 248.  As an overhead expense, word processing cannot be billed to the client.  Overhead also includes secretarial and clerical pay, library costs, and office supplies.  See In re Fibermark, Inc., 349 B.R. 385, 400 (Bankr. D. Vt. 2006) (Overhead expense reimbursement will be "denied . . . categorically.").  Moreover, the UST Guidelines provide that word processing expenses are nonreimbursable "overhead".  See UST Guidelines, (b)(5)(vii).

**B.     Interim Compensation**

32.     Interim fee awards are discretionary, and are subject to re-examination and adjustment during the course of the case.  In re Spanjer Bros., Inc., 191 B.R. 738, 747 (Bankr. D. Ill. 1996) (citing In re Jensen-Farley Pictures, Inc., 47 B.R. 557 (Bankr. D. Utah 1985)).

**C.     Actual and Necessary Expenses**

33.     Under Section 330(a)(1)(B) of the Bankruptcy Code, only documented expenses that are actual and necessary are reimbursable.  11 U.S.C. § 330(a)(1)(B). Professionals must "furnish enough specificity for the Court to establish whether a given

expense was both actual and necessary." In re Korea Chosun Daily Times, Inc., 337 B.R. 758, 769 (Bankr. E.D.N.Y. 2005) (quoting In re S.T.N. Enters., Inc., 70 B.R. 823, 834 (Bankr. D. Vt. 1987)).  Expenses are "actual" if they are incurred and not based on a formula or pro rata calculation.  Bennett Funding, 213 B.R. at 398.  Expenses are "necessary" if they were "reasonably needed to accomplish proper representation of the client."  In re American Preferred Prescription, Inc., 218 B.R. 680, 686-87 (Bankr. E.D.N.Y. 1998).

## V.  OBJECTION

### A.    Fees

**Percentage Reduction**

34.     By the Application, MSF seeks allowance and payment of 100 percent of the compensation and reimbursement of 100 percent of the out-of-pocket expenses incurred during the Fee Period.  As stated above in paragraph 19, the Debtor is delinquent in the filing of its monthly operating reports.  Thus, the amount of cash that the Debtor has on hand at this time is unknown.  Further, the Debtor's last operating report for the period ending November 30, 2010, provides that the Debtor had cash on hand of only approximately $34,000.00.  Based on these figures, it does not appear that the Debtor has the ability to pay the quarterly fees due and owing, which exceed $13,000.00, and the professional fees requested by MSF.

35.     Even if MSF can establish that the Debtor has the ability to pay the quarterly fees due to the United States Trustee and the requested professional fees, the Court should impose a substantial percentage reduction against the fees requested by the Application.  It is noted that the Debtor's financial condition is not strong, and the Debtor

has not yet filed a plan and disclosure statement.  Thus, the outcome of the case is uncertain.

36.     Further, the results that will be achieved in the case serve as an important factor in determining the success of the efforts of these applicants.  <u>See</u>, <u>e.g.</u>, <u>In re Bank of New England Corp.</u>, 134 B.R. 450, 459 (Bankr. D. Mass. 1991), <u>aff'd</u>, 142 B.R. 584 (D. Mass. 1992) (because of the difficulty in determining whether services were actual and necessary when reviewing interim applications, bankruptcy courts routinely require hold backs until the end of the case); <u>see also</u>, <u>In re Child World, Inc.</u>, 184 B.R. 14, 18 (Bankr. S.D.N.Y. 1995) (courts commonly use holdbacks to moderate potentially excessive interim allowances and to offer an incentive to timely resolution of the case). Accordingly, the United States Trustee proposes that the Court reduce any compensation awarded to MSF by a percentage to be determined by the Court (colloquially referred to as a "holdback") pending the final resolution of the case.

**Rate Increase**s

37.     As stated above at paragraph 13, the Retention Order authorizing MSF's employment in this case requires MSF to disclose, by filing a notice with the Court and serving a notice on all interested parties, including the United States Trustee, of any rate increases imposed by MSF upon the Debtor during the pendency of the case.  <u>See</u> Retention Order at 2.  The Court's Order is consistent with the duty of disclosure imposed upon MSF by Bankruptcy Rule 2014, which requires disclosure of arrangements for compensation.  <u>See</u> Fed. R. Bankr. P. 2014.  The law is clear that this duty is continuing. <u>See</u>, <u>e.g.</u>, <u>In re Granite Partners, L.P.</u>, 219 B.R. 22, 35 (Bankr. S.D.N.Y. 1998) (although Rule 2014 does not expressly require supplemental or continuing

disclosure, Section 327(a) of the Bankruptcy Code implies a continuing duty of disclosure).

38.     It appears from the exhibits annexed to the Application that, during the Fee Period, MSF increased the rates it charges for the services of Lawrence F. Morrison (partner), from $450.00 per hour to $475.00 per hour, and for Dawn McNamara (paralegal) from $175.00 per hour to $210.00 per hour.  These rate increases, which aggregate approximately $2,050.00 during the Fee Period, appear to have occurred as of January 1, 2010.  A review of the Court's docket reveals, however, that MSF did not disclose these rate increases by filing with the Court or serving upon the parties the notice required by the Retention Order and Bankruptcy Rule 2014.  The United States Trustee did not receive the required notice.  It is unclear whether any other parties in interest, including the Debtor, received notice of the firm's rate increases.

39.     In addition, neither the Application nor the Certification of Lawrence Morrison filed on behalf of MSF in support of the Application, dated October 1, 2010 (the "Morrison Certification"), provide any disclosure of the rate increase (other than in the exhibits).  The Application and the Morrison Certification also do not provide support for the reasonableness of the rate increase as required by Section 330(a)(1)(A) of the Bankruptcy Code, or the UST Guidelines.  See 11 U.S.C. § 330(a)(1)(A) and UST Guidelines b(1)(iii) (requiring an explanation of any changes in the hourly rates from those previously charged).

40.     Because MSF bears the burden to establish that the rates it charges are reasonable, see infra at paragraph 23, MSF must establish its entitlement to the rate increases.  See Howard & Zukin Capital v. High River Ltd. P'ship, 2007 WL 1217268 at

*2 (each applicant bears the burden of proof for its claim of compensation).  Not only has MSF failed to comply with the Court's Retention Order, Bankruptcy Rule 2014 and the UST Guidelines, but MSF has failed to establish its burden of proof to show that this rate increase is reasonable under Section 330(a)(3) of the Bankruptcy Code.  This burden includes justifying that any rate increase is reasonable.  Although there is no per se prohibition against rate increases during a Chapter 11 case, there is similarly no automatic entitlement.  Any rate increase should, like other fee matters, be subject to a reasonableness review, with the burden on the applicant to prove reasonableness, including, that comparable non-bankruptcy practitioners are paid similar increased rates. See 11 U.S.C. § 330(a)(3)(F); see also, In re Lee Tractor Co., Inc., 2008 WL 2788413 at *2 (Bankr. E.D.N.C. 2008) (at a hearing on debtor's attorney's application for compensation, the court found the rate increases reasonable considering the experience and quality of the work performed and the rates charged by attorneys with comparable experience among the local bankruptcy bar, but noting that "such percentage increases may not be so justified in future applications."); In re Teraforce Tech. Corp., 347 B.R. 838, 860 (Bankr. N.D. Tex. 2006) (holding that the reasonableness of the attorneys' hourly rate increases required a comparison with the local market); In re Reconversion Techs., Inc., 216 B.R. 46, 54-55 (Bankr. N.D. Okla. 1997) (disallowing rate increase because original hourly rates represented "the highest hourly rate which has been approved by this Court to date.").

41.     In this case, given that MSF raised its rates less than five months after it was retained, without any substantial progress having been made in the case, it does not appear that MSF can establish that the rate increases are reasonable.

42.     For these reasons, the United States Trustee proposes that the Court reduce any allowance of fees requested by $2,050.00.

**"Lumped" Time[2]**

43.     Many of the time records contained in MSF's application contain impermissibly "lumped" time.  <u>See</u> UST Guidelines, (b)(4)(v).  By way of example only, these time records include:

| | | |
|---|---|---|
| 9/14/09 | LFM | Prepare and appear at Initial Case Conference (3.00) |
| 9/30/09 | LFM | Prepare for and meet with M. Maslavi re: 341(a) meeting (3.50) |
| 10/9/09 | LFM | Prepare for and appear at status conference (3.50) |
| 12/16/09 | SS | Work on Order to Show Cause, Affirmation and Motion to Extend Time to Assume Lease; review underlying stipulation; review lease (1.50) |
| 8/6/10 | LFM | Begin drafting plan and disclosure statement (1.4) |

44.     Annexed hereto as Exhibit A, are copies of MSF's time records containing the notation "L" adjacent to non-compliant, "lumped" time entries.  The total amount of these time entries is approximately $12,360.00.  The United States Trustee proposes that the Court reduce MSF's fees for such lumped services in the amount of $2,500.00, which represents an approximate 20 percent reduction of the total fees sought ($12,360.00) by MSF for these "lumped" time entries.

---

[2] Many of the time entries identified in this Objection for the Retained Professionals may be considered both "lumped" time and "vague," or are otherwise objectionable.  Where the United States Trustee has identified non-compliant or otherwise objectionable time records that fall under multiple categories, the fees charged for a particular time entry have been included in only one of these categories.  Thus, there is no overlap in the amounts of the offending time entries, or the proposed reductions.

**Vagueness**

45.    MSF's fee application includes many vague time entries that do not comply with the Guidelines.  By way of example only, these time entries include: (i) "Telephone call (x2) to R. Modansky (.60); (ii) "meeting with client re: exit strategy (1.1); (iii) "meet client to sign (.30);" (iv) "serve (.90);" and (v) "prepare information for fee application (.90)."  In fact, one time entry on 1/18/10 states only "Legal Assistant" (.40)."

46.    Annexed hereto as Exhibit A, are copies of MSF's time records containing the notation "V" adjacent to non-compliant, vague time entries.  The total amount of these time entries is approximately $11,842.10.  The United States Trustee proposes that the Court reduce MSF's fees for these vague services in the amount of $2,350.00, which represents an approximate 20 percent reduction of the total fees sought ($11,842.10) by MSF for these vague time entries.

**Overhead and Staffing Inefficiencies**

47.    MSF seeks approval of fees for time spent by attorneys and paralegals on what appears to be clerical and/or administrative duties.  Specifically, MSF seeks to bill the estate for the following services: saving documents into files, faxing correspondence, and preparing and photocopying documents.  These services are clerical and/or administrative and a part of the firm's overhead.  Thus, they are non-compensable by the estate.  See Fibermark, 349 B.R. at 400; see also, UST Guidelines b(5)(vii).

48.    Annexed hereto as Exhibit A, are copies of MSF's time records containing the notation "Secy" adjacent to time entries that are clerical or administrative in nature. The total amount of these time entries is approximately $2,100.00.  The United States

Trustee proposes that the Court reduce MSF's fees by $2,100.00, for these clerical and/or administrative services, which represents the approximate amount billed to the estates for these services.

49.     In addition, MSF seeks to bill the estate for time spent by attorneys e-filing documents with the Court and delivering/retrieving documents from the Court at rates ranging from $370.00 per hour to $475.00 per hour.  These services routinely are performed by paralegals and or couriers and, thus, the fees billed to a debtor's estate are substantially lower than attorney rates.

50.     Annexed hereto as Exhibit A, are copies of MSF's time records containing the notation "S/E" adjacent to time entries that reflect a staffing inefficiency.  The total amount of these time entries is approximately $5,400.00.  The United States Trustee proposes that the Court reduce MSF's fees by $1,000.00, which represents an approximate 20 percent reduction for these fees.

**Reasonableness**

51.     A review of MSF's time records also calls into question the reasonableness of the fees requested for time spent by timekeeper "BDB."  To determine whether the fees requested are reasonable, Section 330(a)(3) of the Bankruptcy Code instructs that courts should consider, among other things: (i) the time spent, (ii) the rates charged, (iii) the benefit to the estate, (iv) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance and nature of the problem, issue, or task addressed, and (v) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.  11 U.S.C. § 330(a)(3).

52.    In this case, BDB is the attorney charging the highest rates to the Debtor ($490.00 per hour), and billed the estate approximately $20,000.00 for 40 hours of time apparently spent: (i) preparing the Debtor's answer to a two-count declaratory judgment action filed by Avi Galapo, a creditor of the Debtor, and (ii) researching and preparing summary judgment papers that, as of the date hereof, have not been filed with the Court. A review of the Court's docket reveals that the only activity in the adversary since it was filed in July 2010, has been the filing of the complaint, the filing of an answer, and a letter requesting a summary judgment court conference.

53.    Not only are many of the time records of BDB vague, but most of the time records for BDB appear to show either that (i) BDB spent more time than is reasonable for the tasks performed or (ii) the highest charging attorney in the case should not be the attorney performing the tasks at hand.  These time records include:

| | |
|---|---|
| 7/28/10 | Review case annotations for NY RPL 291 (1.10) ($539.00) |
| 7/29/10 | Do legal research on "inquiry notice" issue (1.0); review cases (1.0); update memo (1.3) ($1,617.00) |
| 8/3/10 | Check FRCP regarding deadline to file answer (.30) and review affidavit of service for complaint (.20); send email regarding last day to answer complaint (.20); check Haig "Business and Commercial Litigation" treatise regarding answers (.80) ($735.00) |
| 8/18/10 | Check applicable deadline for filing or answer, and applicable FRCP and court rules (.20) ($98.00) |
| 8/26/10 | Do Internet search for similar forms for motion for summary judgment in bankruptcy cases (.50); draft notice of motion (2.0); check Haig treatise on summary judgment in federal courts (.50) ($1,666.00) |
| 8/30/10 | Check local bankruptcy court rules (.70) ($336.00) |

54.     In fact, BDB's fees, which aggregate approximately $20,000.00, constitute greater than 20 percent of the total fees that MSF seeks during the Fee Period.

55.     As the above time records reflect, the amount charged by MSF for these services does not appear to be reasonable and MSF has not met its burden of proof to establish that the fees sought are reasonable.  Accordingly, the United States Trustee proposes that the Court reduce any fees awarded to MSF for these services by $5,000.00, which is approximately 25 percent of the total fees sought by MSF ($20,000.00) for these services.

**Defense of Initial Fee Application**

56.     Although the reasonable cost of preparing a fee application is compensable under Section 330(a)(6) of the Bankruptcy Code, the costs associated with defending against an objection to a fee application may not be.  See CCT, 2010 WL 3386947, at *8.  As the CCT court noted, "there is no parallel statutory requirement to defend against an objection to a fee application, or to receive compensation for the legal fees incurred in that defense."  Id.  Generally, fee litigants, like other litigants, must bear the costs of defense under the "American Rule."  Id. (citing In re St. Rita's Assocs. Private Placement, L.P., 260 B.R. 650, 652 (Bankr. W.D.N.Y. 2001) (additional citations omitted)).  In St. Rita's, the bankruptcy court aptly noted that, "[o]utside of the field of bankruptcy, when clients refuse to pay a disputed bill, attorneys must choose either to "write-off" the liability or to commence litigation for collection."  St. Rita's, 260 B.R. at 652.

57.     The CCT court also recognized that some courts have allowed reasonable defense costs where the fee applicant has substantially prevailed.  See CCT, 2010 WL

3386947, at *9 (citing <u>Smith v. Edwards & Hale, Ltd.</u> (<u>In re Smith</u>), 317 F.3d 918, 929 (9th Cir. 2002) (additional citations omitted)).  The <u>CCT</u> court also noted that "[a]t least one court has expressed the concern that allowing the losing applicant to recover its legal fees would encourage meritless fee requests because the applicant could earn more fees opposing objections to its frivolous request."  <u>Id.</u> (citing <u>In re Riverside-Linden Inv. Co.</u>, 945 F.2d at 323)).  In <u>CCT</u>, the bankruptcy court allowed reasonable defense costs because it found that the fee applicant had substantially prevailed.  <u>Id.</u>

58.     Here, MSF seeks an allowance of approximately $6,000.00 for, in essence, reviewing the Initial UST Objection.  As stated above at paragraphs 14 through 16, not only did MSF not wage a defense to the Initial UST Objection, but MSF withdrew the Initial Application, and agreed to voluntarily reduce its final fee request by $7,500.00 in response to the serious issues the United States Trustee identified in her objection.  Under these circumstances, the United States Trustee proposes that the Court disallow these requested fees in their entirety.

**Failure to Comply with the UST Guidelines/Time Records**

59.     A review of MSF's time records reveals that the records have not been maintained in accordance with the UST Guidelines, which specifically provide that "[t]ime entries should be kept contemporaneously with the services rendered in time periods of tenths of an hour."[3]  UST Guidelines at ¶ 4(v).  Many of the time entries contained in MSF's invoices have not been recorded in tenths of an hour.  By way of example only, some of these time entries include:  (i) "Go through, compile and organize lien search results.  Save into file and correspond with L. Morrison and S. Rich regarding

_____

[3] It is noted that this objection also was raised in the Initial UST Objection.  <u>See</u> Initial UST Objection at ¶ 44.

same (.42);" (ii) File stipulation online and prepare copy for delivery to chambers (.67);" and (iii) "Prepare information for fee application."

60.     Annexed hereto as Exhibit A, are copies of MSF's time records containing the notation "NC" adjacent to non-compliant time entries that were not maintained in tenths of an hour as required by the UST Guidelines.  The total amount of these time entries is approximately $400.00.  The United States Trustee proposes that the Court reduce MSF's fees for noncompliant time entries by $75.00, which represents an approximate 20 percent reduction of the total fees sought ($400.00) by MSF for these time.

**B.**     **Expenses**

61.     By the Application, MSF seeks reimbursement of out-of-pocket expenses in the amount of 3,651.48.  MSF, however, does not provide any back up or detail itemizing any of the expenses it seeks, other than setting forth the costs in broad categories.  Absent explanation, the United States Trustee proposes that the Court deny the expense reimbursement in its entirety.

## VI. CONCLUSION

WHEREFORE, the United States Trustee respectfully submits that the Court enter an Order (i) reducing the fees that MSF has requested, (ii) reducing the expense reimbursements that MSF has requested, (iii) directing MSF to supplement the Application as set forth above, and (iv) granting such other relief as the Court deems just.

Dated: New York, New York
      January 16, 2011

Respectfully submitted,

TRACY HOPE DAVIS
UNITED STATES TRUSTEE

By  */s/ Andrea B. Schwartz*
     Andrea B. Schwartz, Trial Attorney
     33 Whitehall Street, 21st Floor
     New York, New York 10004
     Tel. No. (212) 510-0500
     Fax No. (212) 668-2255